**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------X

In re:                                                    Chapter 11

**AUTORAMA ENTERPRISES INC. F/K/A**          Case No:  18-13837-smb
**AUTORAMA ENTERPRISES OF BRONX,**
**INC.,**

                                  Debtor.
-----------------------------------------------------------X


**AMENDED PLAN OF REORGANIZATION**
**OF AUTORAMA ENTERPIRES INC.**
**F/K/A AUTORAMA ENTERPRISES OF BRONX, INC. (AS MODIFIED)**


                         **ROBINSON BROG LEINWAND**
                         **GREENE GENOVESE & GLUCK P.C.**
                         **Attorneys for the Debtor**
                         875 Third Avenue
                         New York, New York 10022
                         Tel. No.:  212-603-6300
                         **A. Mitchell Greene, Esq.**


**Dated:**  New York, New York
           October 18, 2019

**Autorama Enterprises Inc. f/k/a Autorama Enterprises of Bronx, Inc.**, the debtor and debtor in possession (the "**Debtor**"), proposes the following amended plan of reorganization, as modified (the "**Plan**") pursuant to sections 1121(a), 1122 and 1123 of title 11 of the United States Code.

ARTICLE 1

DEFINITIONS

Unless the context otherwise requires (i) the following terms shall have the following meanings when used in this Plan; (ii) any capitalized term that is used in this Plan and not defined in this Article 1 but that is defined in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning set forth therein; (iii) terms stated in the singular shall include the plural and vice versa; (iv) pronouns stated in the masculine, feminine or neuter gender shall include the masculine, the feminine and the neuter; (v) all section, article and exhibit references in the Plan are to the respective section of, article of or exhibit to the Plan; (vi) any reference to a contract, instrument, release or other agreement or document being in a particular form or on particular terms and conditions, means that such document shall be substantially in such form or substantially on such terms and conditions except as stated otherwise in the Plan; (vii) any reference to an existing document or exhibit filed or to be filed means such document or exhibit, as it may have been or may be amended, modified or supplemented; (viii) the words "herein", "hereof", "hereto" or "hereunder" and other words of similar import refer to the Plan in its entirety rather than to only a particular portion of the Plan; (ix) the rules of construction set forth in section 102 of the Bankruptcy Code shall govern construction of the Plan; and (x) any reference contained herein to the Bankruptcy Code, or to any section of the Bankruptcy Code, refers to the Bankruptcy Code, or such section of the Bankruptcy Code, as it is existing and effective on the Petition Date, except to the extent, if any, that any post-Petition Date

amendment to the Bankruptcy Code applies retroactively to cases filed on the Petition Date.

1.1    "**Administrative Bar Date**" means the first Business Day that is at least 60 days after the Effective Date.

1.2    "**Administrative Claim**" means a Claim for, or request for payment of, an Administrative Expense (i) as to which no objection to the allowance thereof has been interposed within the applicable period of limitation fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, or (ii) as to which any objection has been resolved by a Final Order allowing such Claim in whole or in part, to the extent such Claim is allowed.

1.3    "**Administrative Expense**" means any cost or expense of administration of this Case, other than (a) Bankruptcy Fees, allowable under sections 503(b), 330 or 331 of the Bankruptcy Code, or (b) Administrative Claims incurred in the ordinary course of the Debtor's business.

1.4    "**Administrative Tax Claim**" means an Administrative Claim for a tax due to a Governmental Unit.

1.5    "**Allowed Claim**" means a Claim or any portion thereof against the Debtor that has not been disallowed pursuant to a Final Order and is not a Disputed Claim and (i) with respect to which a Proof of Claim has been timely filed with the clerk of the Bankruptcy Court or, (ii) if no Proof of Claim has been filed, that has been or hereafter is listed by the Debtor in the Schedules as liquidated in amount and not disputed or contingent.

1.6    "**Allowed Secured Claim**" means an Allowed Claim, including all amounts, if any, allowed pursuant to section 506(b) of the Bankruptcy Code, to the extent that it is secured by a Lien on Property in which the Estate has an interest or that is subject to set-off under section 553 of the Bankruptcy Code, to the extent of the value of the Claim Holder's interest in the Estate's interest in such Property or to the extent of the amount subject to set-off, as applicable, as determined by a

Final Order pursuant to section 506(a) of the Bankruptcy Code or as provided for in the Plan.

1.7    **"Available Cash"** means the sum of cash remaining in the Debtor's Estate.

1.8    "**Bankruptcy Code**" means title 11 of the United States Code, as amended from time to time and effective as to cases filed on the Petition Date.

1.9    "**Bankruptcy Court**" means the United States Bankruptcy Court for the Southern District of New York, or the United States District Court for the Southern District of New York (the "District Court") to the extent it withdraws the reference or it is determined that the Bankruptcy Court lacks jurisdiction over all or any portion of this Case pursuant to section 157(d) of title 28 of the United States Code.

1.10    "**Bankruptcy Fees**" means all fees and charges assessed against the Estate under section 1930 of title 28 of the United States Code.

1.11    "**Bankruptcy Rules**" means (i) the Federal Rules of Bankruptcy Procedure, and (ii) the Local Bankruptcy Rules for the United States Bankruptcy Court for the Southern District of New York, in effect on the Petition Date, together with any and all amendments and modifications thereto that were subsequently made applicable to these Chapter 11 Cases.

1.12    "**Bar Date**" means January 25, 2019 for creditors and May 27, 2019 for governmental units as set forth in the Bar Date Order.

1.13    "**Bar Date Order**" means the *Order Establishing Deadline for Filing Proofs of Claim and Approving the Form and Manner of Notice Thereof* entered on December 19, 2018 (ECF Doc. No. 15) which established January 25, 2019 as the last day for creditors to file claims against the Debtor's estate and May 27, 2019 as the last day for governmental units to file claims against the Debtor's estate.

1.14    "**Business Day**" means any day other than a Saturday, Sunday, or other day on which

{01022531.DOC;2 }4

commercial banks in New York, New York are authorized or required by law to close, or other Legal Holiday.

1.15    "**Case**" means the case under chapter 11 of the Bankruptcy Code commenced in the Bankruptcy Court on the Petition Date and styled *Autorama Enterprises Inc. f/k/a Autorama Enterprises of Bronx, Inc.*, Case No. 18-13837-smb.

1.16    "**Cash**" means, on any Business Day, immediately available funds, in United States dollars, which may be spent or transferred without restriction no later than the next Business Day.

1.17    "**Claim**" means a "Claim," as defined in section 101(5) of the Bankruptcy Code.

1.18    "**Class**" means a category of substantially similar Allowed Claims as established pursuant to article 3 of the Plan.

1.19    "**Confirmation**" means the entry of the Confirmation Order on the docket of the Chapter 11 Case.

1.20    "**Confirmation Date**" means the date on which the Confirmation Order is entered by the Bankruptcy Court, provided that the Confirmation Order becomes a Final Order.

1.21    "**Confirmation Order**" means an Order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code, in form and substance reasonably satisfactory to the Debtor.

1.22    "**Creditor**" means a Holder of an Allowed Claim.

1.23    "**Cure Amount**" means any amount required, pursuant to sections 365(b)(1)(A) and 365(b)(1)(B) of the Bankruptcy Code, to cure any defaults or compensate the non-debtor party to any Executory Contract or Unexpired Lease for any actual pecuniary loss resulting from a default in respect of an Executory Contract or Unexpired Lease.

1.24    "**Debtor**" means Autorama Enterprises Inc. f/k/a Autorama Enterprises of Bronx, Inc.

1.25    "**Disbursing Agent**" means the Debtor.

1.26    "**Disclosure Statement**" means the *Amended Disclosure Statement for the Amended Plan of Reorganization of Autorama Enterprises Inc. f/k/a Autorama Enterprises of Bronx, Inc.*, including all exhibits, attachments or amendments thereto, to be filed, and approved by Final Order of the Bankruptcy Court.

1.27    "**Disputed Claim**" means:

(a)    any Claim that is listed in the Schedules as disputed, contingent or unliquidated and with respect to which no Proof of Claim has been filed;

(b)    any Claim (including an Administrative Expense Claim), or portion thereof, that has not been disallowed and with respect to which an objection to the allowance thereof, in whole or in part, or the estimation of such Claim, has been filed with the Bankruptcy Court within the applicable period of limitation fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules or the Bankruptcy Court, to the extent that any such objection has not been resolved by a Final Order; and

(c)    Until the earlier of (i) the filing of an objection to a Proof of Claim or (ii) the last date to file objections to Claims as established by the Plan or by Final Order, a Claim represented by a Proof of Claim shall be deemed to be a Disputed Claim in its entirety if, (x) the amount specified in the Proof of Claim exceeds the amount of any corresponding Claim listed in the Schedules; (y) any corresponding Claim listed in the Schedules has been scheduled as disputed, contingent or unliquidated; or (z) no corresponding Claim has been listed in the Schedules.

1.28    "**Disputed Claim Reserve**" means the segregated account or accounts established by the Disbursing Agent pursuant to section 7.7 of the Plan.

1.29    "**DTF**" means the New York State Dept. of Taxation and Finance.

1.30    "**Effective Date**" means the first Business Day after which all of the conditions to the Effective Date, specified in Section 11.1 of this Plan have been satisfied.

1.31    "**Estate**" means the estate of the Debtor created on the Petition Date pursuant to section 541 of the Bankruptcy Code.

1.32    "**Executory Contract**" means an executory contract within the meaning of section 365 of the Bankruptcy Code.

1.33    "**Final Order**" means a judgment, order, ruling or other decree of the Bankruptcy Court (or the District Court) entered by the Clerk on the docket of the Chapter 11 Case (or on the docket of the District Court) that has not been reversed, vacated or stayed and as to which (i) the time to appeal, petition for *certiorari* proceeding or move for a new trial, reargument or rehearing has expired and as to which no appeal, petition for *certiorari* proceeding, or other proceedings for a new trial, reargument or rehearing shall then be pending, or (ii) if an appeal, writ of *certiorari*, new trial, reargument or rehearing thereof has been sought, such order or judgment of the Bankruptcy Court (or the District Court) shall have been affirmed by the highest court to which such order was appealed, or *certiorari* shall have been denied or a new trial, reargument or rehearing shall have been denied or resulted in no modification of such order, and the time to take any further appeal, petition for *certiorari* or move for a new trial, reargument or rehearing shall have expired; *provided, however*, that the possibility that a motion under Bankruptcy Rule 9023 or Bankruptcy Rule 9024, or any analogous rule under the Bankruptcy Rules (or rule of the District Court), may be filed relating to such order shall not cause such order not to be a Final Order.

1.34    "**Holder**" means a Person holding a Claim.

1.35    "**Interest**" means an equity interest in the Debtor.

1.36    "**Interest Holder**" means the Holder of an Allowed Interest in the Debtor.

1.37   "**IRS**" means the Internal Revenue Service.

1.38   "**IRS Tax Claim**" means the Allowed Claim of the IRS.

1.39   "**Kimcomatt Lease**" means the Agreement of Lease dated August 18, 2015 with Kimcomatt Realty Company L.P.

1.40   "**Lease**" means any Unexpired Lease of real property.

1.41   "**Legal Holiday**" means a "Legal Holiday" as that term is defined in Bankruptcy Rule 9006(a).

1.42   "**Lien**" means any charge against or interest in property to secure payment of a debt or performance of an obligation.

1.43   "**NYS Tax Claim**" means the Allowed Claim of the New York State Dept. of Taxation and Finance.

1.44   "**Order**" means an order of the Bankruptcy Court.

1.45   "**Person**" means a person as defined in 11 U.S.C. §101(41).

1.46   "**Petition Date**" means November 28, 2018, the date that the Debtor commenced this Case by filing a voluntary petition with the Bankruptcy Court for relief under Chapter 11 of the Bankruptcy Code.

1.47   "**Plan**" means this *Amended Plan of Reorganization of Autorama Enterprises Inc. f/k/a Autorama Enterprises of Bronx, Inc.,* as it may be further amended, supplemented or modified from time to time, including any exhibits or schedules annexed hereto or required to be filed with the Bankruptcy Court pursuant hereto.

1.48   "**Plan Supplement**" means a separate volume to be filed with the Bankruptcy Court, if necessary, as a supplement to this Plan no later than five (5) days prior to the hearing date to confirm the Plan that shall contain the documents necessary to administer this Plan.

1.49    "**Priority Non-Tax Claim**" means that portion of an Allowed Claim, other than a Priority Tax Claim, an Administrative Tax Claim, a Secured Claim, or Bankruptcy Fees, entitled to priority in payment under Bankruptcy Code section 507(a) or (b).

1.50    "**Priority Tax Claim**" means an Allowed Claim of a governmental unit of the kind specified in section 507(a)(8) of the Bankruptcy Code.

1.51    "**Professional**" means all professionals employed by the Debtor under sections  327 or 330 of the Bankruptcy Code to render professional services in the Chapter 11 Case pursuant to a Final Order.

1.52    "**Professional Fees**" means compensation for services rendered, and reimbursement of expenses incurred, by Professionals prior to the Effective Date, as Allowed and awarded by Final Order following application, in accordance with sections 330 and 331 of the Bankruptcy Code.

1.53    "**Proof of Claim**" means a proof of Claim filed pursuant to section 501 of the Bankruptcy Code and Part III of the Bankruptcy Rules.

1.54    "**Pro Rata**" means the proportion that an Allowed Claim in a particular Class bears to the aggregate amount of all Allowed Claims in such Class.

1.55    "**Reorganized Debtor**" means the Debtor on and after the Effective Date.

1.56    "**Schedules**" mean the schedules of assets and liabilities, any amendments with respect thereto, and the *Statement of Financial Affairs* filed by the Debtor with the Bankruptcy Court in accordance with section 521(1) of the Bankruptcy Code and Rule 1007 of the Bankruptcy Rules and any amendments thereto.

1.57    "**Secured Tax Claim**" means a Secured Claim for taxes or assessments held by a Governmental Unit, to the extent, if any, that such taxes and assessments are entitled to a security interest under applicable non-bankruptcy law.

1.58    "**Transfer Taxes**" means any and all stamp taxes or similar taxes, if and as applicable and imposed by a governmental unit with respect to the transfer of the Property or interest therein.

1.59    "**Unexpired Lease**" means an unexpired lease within the meaning of section 365 of the Bankruptcy Code.

1.60    "**Unsecured Claim**" means a Claim against the Debtor that is not an Administrative Claim, an Administrative Tax Claim, a Bankruptcy Fee, a Priority Tax Claim, a Priority Non-Tax Claim, a Secured Claim, or a Convenience Claim.

1.61    "**Unsecured Creditor**" means the Holder of an Unsecured Claim.

## ARTICLE 2

### TREATMENT OF UNCLASSIFIED CLAIMS

Pursuant to section 1123(a)(1) of the Bankruptcy Code, the Plan does not Classify Administrative Claims, including Administrative Tax Claims or Allowed Priority Tax Claims. Such Claims, to the extent Allowed, shall receive the treatment provided in this article 2 in full satisfaction, release and discharge thereof.

2.1    **Administrative Bar Date**. Except as otherwise provided in sections 2.2, 2.3 and 2.4 of the Plan, requests for payment of Administrative Expenses must be filed no later than the Administrative Bar Date. Holders of Claims for payment of Administrative Expenses that do not file requests for the payment of Administrative Expenses on or before the Administrative Bar Date shall be forever barred from asserting such Claims against the Debtor or its Property.

2.2    **Professional Compensation and Reimbursement**. Each Person seeking an award by the Bankruptcy Court of Professional Fees shall file its final application for approval of its Professional Fees no later than the Administrative Bar Date (each, a "Final Application"). Each Holder of a Final Application that the Bankruptcy Court has approved (the "Court Approved Fees")

shall receive from the Disbursing Agent, in full satisfaction of such Court Approved Fees, Cash in the amount of such Court Approved Fees within the earlier of the Effective Date or three days of the entry of a Final Order Allowing such Court Approved Fees, or as may be otherwise mutually agreed in writing between the Debtor and the party seeking to be paid Professional Fees.

2.3     **Administrative Claims**. Subject to the provisions of Article 7 of the Plan with respect to Disputed Claims, each Administrative Claim, to the extent not previously paid, shall be paid by the Disbursing Agent in Cash in full on (i) the later of (x) the Effective Date, (y) the date payment of such Claim is due under the terms thereof or applicable law, or (z) three business days after such Claim becomes an Allowed Administrative Claim or (ii) as may be otherwise mutually agreed in writing between the Debtor and the Holder of such Claim; *provided, however,* that any Administrative Claim incurred by the Debtor in the ordinary course of its business shall be paid in full or performed by the Reorganized Debtor in accordance with the terms and conditions of the particular transaction giving rise to such Administrative Claim and any agreements relating thereto.

2.4     **Administrative Tax Claims.**  Subject to the provisions of Article 7 of the Plan with respect to Disputed Claims, all Administrative Tax Claims shall be paid, in Cash, in full, together with applicable interest, either (i) on or prior to the Effective Date or (ii) upon such other terms as may be agreed to, in writing, between the Debtor and such Governmental Units on or before the Effective Date.

2.5     **Priority Tax Claims.**  Each Holder of a Priority Tax Claim, except for NYS,[1] who have agreed to be treated as set forth below, will be paid over a five (5) year period from the date of the Order for Relief in equal quarterly payments with interest at the applicable statutory rate, with the first quarterly payment to be made three months after the Effective Date.  The Debtor shall

be allowed to prepay in full or in part any Priority Tax Claim without any penalty or premium.

The NYS Tax Claim will be paid over a five (5) year period from the Effective Date of the Plan in equal quarterly payments with interest at 8% per annum, with the first quarterly payment to be made three months after the Effective Date and thereafter quarterly from the first payment.  The Debtor has no objection to the NYS Tax Claim which will be an Allowed Claim pursuant to the Plan. The Debtor shall be allowed to prepay in full or in part the NYS Tax Claim without any penalty or premium.  DTF shall retain its liens to the same extent and priority as existed on the Petition Date.  Failure by the Reorganized Debtor to make a payment to DTF pursuant to this Plan shall be an event of default.  If the Reorganized Debtor fails to cure an event of default within 30 days of written notice to the Reorganized Debtor pursuant to Section 9.12 of the Plan, then DTF may take action in accordance with non-bankruptcy law to collect the balance of its claim without further order of the bankruptcy court.  All payments pursuant to the Plan shall be sent to counsel to DTF at the following address:  Office of the NYS Attorney General, 28 Liberty Street, New York, NY 10005 Attention Enid Nagler Stuart.

Any penalties, secured or unsecured, arising with respect to or in connection with the Priority Tax Claims shall be treated as a Class 2 Unsecured Claim.

2.6    **Bankruptcy Fees and Court Charges.**  All outstanding Bankruptcy Fees, all Bankruptcy Court charges, and any applicable interest thereon, shall be paid by the Reorganized Debtor, in full, in Cash on the Effective Date, and thereafter when due, until the closing, conversion or dismissal of this Case, whichever is earlier.

---

1 A portion of the NYS Tax Claim and IRS Tax Claim were asserted as secured.

## ARTICLE 3

### CLASSIFICATION OF CLAIMS

Except as otherwise provided in article 2, Allowed Claims are classified as set forth in this article 3.  A Claim is in a particular Class designated herein only to the extent such Claim (i) fits within the description of such Class and is in such other and different Class or Classes to the extent that the remainder thereof fits within the description of such other Class or Classes and (ii) has not been paid, released or otherwise satisfied prior to the Effective Date.

**Class 1 – Priority Non-Tax Claims.** Class 1 consists of all Allowed Priority Non-Tax Claims.

**Class 2 – Unsecured Claims.**  Class 2 consists of all Allowed Unsecured Claims.

**Class 3 – Interest Holders.**  Class 3 consists of all Allowed Interests.

## ARTICLE 4

### TREATMENT OF CLAIMS

Allowed Claims in Class 1 and Allowed Interests in Class 3 are Unimpaired, are not entitled to vote on the Plan, and are deemed to have accepted the Plan.  Allowed Claims in Class 2 are impaired and are entitled to vote to accept or reject the Plan.  The members of each Class shall receive the following treatment under the Plan in full satisfaction, release and discharge thereof.

4.1    **Class 1 – Priority Non-Tax Claims.**  In full satisfaction, release and discharge of the Allowed Priority Non-Tax Claims, each Holder of an Allowed Priority Non-Tax Claim shall receive on the Effective Date, or as soon as practicable after each such Claim becomes an Allowed Claim, whichever is sooner, payment from the Disbursing Agent, (i) in Cash in the full amount of its Allowed Priority Non-Tax Claim, with applicable interest, or (ii) as may be otherwise agreed in writing between the Debtor and the Holder of such Priority Non-Tax Claim.

4.2    **Class 2 – Unsecured Claims.**  Each Holder of a Class 2 Unsecured Claim,

except with regard to any Disputed Claims, shall receive cash in the amount of 25% of its allowed Unsecured Claim in three equal payments, with the first payment to be made three months after the Effective Date, and the remaining two payments to be made on the anniversary of the initial payment.

4.4 **Class 3 – Interest Holders.** Holders of Class 3 Interest Holders shall receive no distribution, but shall retain their Interests in the Debtor in consideration for their new value contribution, which consists of $210,000 to be contributed by Interest Holders towards funding the Plan.

## ARTICLE 5

## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

5.1 **Assumption and Assignment of Executory Contracts and Unexpired Leases.** On the Effective Date, all Executory Contracts and Unexpired Leases to which Debtor is a party, if any, including, without limitation, all Leases, shall be deemed assumed and assigned to the Reorganized Debtor in accordance with Section 365 of the Bankruptcy Code.

5.2 **Assumption of Lease with Kimcomatt Realty Company L.P.** The Kimcomatt Lease is being assumed pursuant to the terms of the Stipulation attached hereto as **Exhibit A**.

5.3 **Rejection Claims.** Allowed Claims arising from the rejection of any Executory Contract or Unexpired Lease of the Debtor shall be treated as an Unsecured Claim**.**

5.4 **Bar to Rejection Claims.** A Proof of Claim with respect to any Unsecured Claim for damages arising from the rejection of an Executory Contract or Unexpired Lease pursuant to the Plan must be filed with the Bankruptcy Court and served so that it is received by the Debtor no later than 30 days after the later of  the date of entry of a Final Order approving such rejection

(unless such Final Order expressly provides a Bar Date with respect to such Claim), or (ii) the Effective Date.

## ARTICLE 6

### IMPLEMENTATION OF THE PLAN

6.1    **Implementation.**  The Debtor shall take all necessary steps, and perform all necessary acts, to consummate the terms and conditions of the Plan.  The Confirmation Order shall contain appropriate provisions, consistent with section 1142 of the Bankruptcy Code, directing the Debtor, the Reorganized Debtor, and any other necessary party to execute or deliver or to join in the execution or delivery of any instrument required to effect a transfer of property required by the Plan and to perform any act, including the satisfaction of any lien, that is necessary for the consummation of the Plan.

6.2    **Plan Funding**.  Payments and distributions to be made under the Plan to the Holders of Administrative Claims, Priority Tax Claims, the NYS Tax Claim, the IRS Tax Claim, Bankruptcy Fees and Unsecured Claims shall be distributed to Creditors as set forth herein from either (a) cash assets of the Debtor existing on the Effective Date; (b) cash generated from operations following the Effective date;[2] (c) an equity contribution from Interest Holders in the amount of $210,000, $110,000 of which shall be used towards assuming the Kimcomatt Lease and the other $100,000 towards paying down the IRS Tax Claim; and (d) such other assets as may be identified by the Debtor prior to confirmation. Prior to the Effective Date the Debtor shall segregate sufficient cash to pay or reserve for all payments that are to be made by the Debtor on the Effective Date pursuant to the terms of the Plan, if any.

---

2  The Debtor anticipates generating additional revenue from the procurement of additional towing contracts.

6.3     **Transfer Taxes.**  Pursuant to section 1146 of the Bankruptcy Code, the issuance, transfer, or exchange of any security and the making or delivery of any instrument of transfer in connection with or in furtherance of the Plan (including, but not limited to, any instrument executed in furtherance of the transactions contemplated by the Plan) shall be exempt and shall not be subject to tax under any law imposing a stamp tax, real estate Transfer Tax, mortgage recording tax or similar tax, and, to the extent provided by section 1146 of the Bankruptcy Code, if any, shall not be subject to any state, local or federal law imposing sales tax; (b) Pursuant to Section 1142(b) of the Bankruptcy Code, the Confirmation Order shall direct the Register's Office to record any recordable document executed in connection with the consummation of the Plan, without the payment of Transfer Taxes.  The Office of the Register of the City of New York and any applicable Register's Office in the State of New York or its municipalities and counties shall record any recordable document executed in connection therewith without the payment of any Transfer Taxes.

6.4     **Vesting of Assets.**  Except as otherwise provided in the Plan, on the Effective Date all of the Debtor's assets, shall vest in the Reorganized Debtor, free and clear of all Liens, Claims and encumbrances, unless such liens are specifically retained under the Plan.   On the Effective Date, any and all Liens, Claims and encumbrances that have not been expressly preserved under the Plan shall be deemed extinguished as of such date. Following the Effective Date, the Reorganized Debtor may operate, buy, use, acquire, and dispose such property and may settle and compromise any Claims, Interests and causes of action in accordance with the provisions of the Bankruptcy Code and the Bankruptcy Rules.

6.5     **Execution of Documents.**  (a)  On the Effective Date, the Debtor, and any necessary party thereto, shall execute, release and deliver all documents reasonably necessary to consummate the transactions contemplated by the terms and conditions of the Plan.

(b)     Pursuant to sections 105, 1141(c) and 1142(b) of the Bankruptcy Code, the Debtor/Reorganized Debtor shall be authorized to execute, in the name of any necessary party any estoppel certificate, or any notice of satisfaction, release or discharge of any Lien, Claim or encumbrance (including any Lien, Claim or encumbrance that is to be released and satisfied upon the Debtor's compliance with the provisions of article 4 of the Plan) not expressly preserved in the Plan and deliver such notices to any and all federal, state and local governmental agencies or departments for filing and recordation, and the Confirmation Order shall expressly so provide.

6.6     **Filing of Documents.**  Pursuant to sections 105, 1141(c) and 1142(b) of the Bankruptcy Code, each and every federal, state and local governmental agency or department, shall be directed to accept and record any and all documents and instruments necessary, useful or appropriate to effectuate, implement and consummate the transactions contemplated by the Plan, and any and all notices of satisfaction, release or discharge or assignment of any Lien, Claim or encumbrance not expressly preserved by the Plan.

6.7     **Preservation of Rights of Action.**  Except as otherwise provided in the Plan, or in any contract, instrument, release or other agreement entered into in connection with the Plan, the Debtor shall retain any Claims, rights and causes of action (i) arising under sections 510 and 544 through 550 of the Bankruptcy Code or (ii) belonging to the Debtor as of the Petition Date, or the Estate, and (ii) arising under any provision of state or federal law, or any theory of statutory or common law or equity belonging to the Debtor as of the Effective Date.

6.8     **Post-Confirmation Management and Compensation**.  The Debtor will continue in existence post-Effective Date as the Reorganized Debtor and continue to be managed by Daniel Powers, as President, who will continue to be compensated under the same terms.

6.9     **Corporate Governance Documentation.**  The operating agreement of the

Debtor shall be amended and restated as necessary to satisfy the provisions of the Plan and the Bankruptcy Code, as is necessary.

## ARTICLE 7

### PROVISIONS GOVERNING DISTRIBUTIONS

7.1     **Disbursing Agent.**  The Disbursing Agent shall be the Reorganized Debtor, which shall distribute all Cash or other property to be distributed under the Plan and may employ or contract such third parties as may be necessary to assist in or perform the distribution of Cash or other property under the Plan.  Pending the final distribution of all sums distributable under the terms of the Plan (including the delivery to the Reorganized Debtor of unclaimed distributions pursuant to section 7.14 of the Plan), the Disbursing Agent shall have full authority to sign checks on any bank account of the Reorganized Debtor to the extent necessary to make any payment or distribution contemplated by the Plan.

7.2     **Timing of Distributions Under the Plan.** Subject to sections 7.6 and 7.8 of the Plan, any payments, distributions or other performance to be made pursuant to the Plan on account of any Disputed Claim, shall be deemed to be timely made if made on or within five days following the later of (i) the expiration of any applicable objection deadline with respect to such Disputed Claim or (ii) such other times provided in the Plan.

7.3     **Method of Payment.**  Unless otherwise expressly agreed in writing, all Cash payments to be made pursuant to the Plan shall be made by check drawn on a domestic bank.

7.4     **Claims Objection Deadline.**  Unless otherwise ordered by the Bankruptcy Court for cause, the Debtor or the Reorganized Debtor may file and serve any objection to any Claim at any time, but in no event after the later to occur of (i) 60 days after the Effective Date, or (ii) 60 days after the date proof of such Claim or a request for payment of such Claim is filed.

7.6    **Prosecution of Objections.**    After the Effective Date, only the Debtor/Reorganized Debtor shall have authority to file, settle, compromise, withdraw or litigate to judgment objections to Disputed Claim.  The Reorganized Debtor may comprise any objections to Disputed Claims without further order of the Court.

7.7    **No Distribution Pending Allowance.**  Notwithstanding any other provision of the Plan, no payment or distribution of any kind shall be made with respect to any portion of a Disputed Claim unless and until all objections to such Claim are resolved by Final Order or post-Effective Date agreement.

7.8    **Escrow of Cash Distributions.**   (a)  On any date that distributions are to be made under the terms of the Plan, the Debtor/Reorganized Debtor shall make available any and all Cash required under Plan to be disbursed on that date, and the Disbursing Agent shall deposit in one or more segregated accounts Cash equal to 100% of the Cash that would be distributed on such date on account of Disputed Claims as if each such Disputed Claim were an Allowed Claim but for the pendency of a dispute with respect thereto, including, but not limited to (i) Disputed Claims that may be entitled to treatment as Administrative Claims or as Priority Non-Tax Claims pursuant to sections 503 and 507 of the Bankruptcy Code, (ii) Claims of governmental units for any tax, (iii) any disputed Cure Amount, and (iv) any amount due but not payable on the Effective Date on account of Administrative Claims or Claims entitled to priority pursuant to section 503 and 507 of the Bankruptcy Code.  The Disbursing Agent shall also segregate any interest, dividends or other proceeds of such Cash, if any.  Such Cash together with any interest, dividends or proceeds thereof, if any, shall be held in trust for the benefit of the Holders of all such Disputed Claims pending determination of their entitlement thereto.

(b)    The Reorganized Debtor shall have the right to seek an Order of the

Bankruptcy Court, after notice and hearing, estimating or limiting the amount of Cash that must be so deposited on account of any Disputed Claim.  Any Creditor whose Claim is so estimated shall have no recourse to any assets theretofore deposited on account of any Disputed Claim if the Allowed Claim of that Creditor as determined by Final Order exceeds the amount so deposited. Such Creditor shall have recourse first, to the undistributed assets in the Disputed Claims Reserve (on a Pro Rata basis with other Creditors of the same Class who are similarly situated) that exceed the aggregate amount of all Disputed Claims allowed by Final Order, or not yet resolved, and second any unpaid amount shall be an obligation of the Reorganized Debtor.

7.9     **Distribution After Allowance.**  Within 5 days after the entry of a Final Order resolving an objection to a Disputed Claim, the Disbursing Agent shall distribute all Cash, including any interest, dividends or proceeds thereof, if any, to which a Holder is then entitled with respect to any formerly Disputed Claim that has become an Allowed Claim.

7.10     **Investment of Segregated Cash.**  To the extent practicable, the Disbursing Agent may invest any Cash segregated on account of a Disputed Claim, undeliverable distribution, or any proceeds thereof (i) in a manner that will yield a reasonable net return taking into account the safety of the investment or (ii) in any manner permitted by section 345 of the Bankruptcy Code; *provided, however,* that the Disbursing Agent shall be under no obligation to so invest such Cash or proceeds and shall have no liability to any party for any investment made or any omission to invest such Cash or proceeds.  Segregated Cash shall be maintained in an authorized depository.

7.11     **Distribution After Disallowance.**  Subject to section 7.7 of the Plan, the Cash segregated on account of Disputed Claims, including the allocable portion of the net return yielded from any investment thereof, if any, remaining after all Disputed Claims have been resolved by Final Order shall revert to the Reorganized Debtor.

7.12    **Surrender of Instruments; Execution of Satisfactions and Releases.**

(a)  Notwithstanding any other provision of the Plan, no Creditor that holds a note or other instrument evidencing such Creditor's Claim may receive any distribution with respect to such Claim unless and until the original note or other original instrument evidencing such Claim shall have been validly surrendered to the Disbursing Agent at the sole cost and expense of the Debtor.

(b)    Any Cash or property to be distributed pursuant to the Plan on account of any such Claim shall, pending such surrender, be treated as an undeliverable distribution pursuant to section 7.13 of the Plan.

(c)    Notwithstanding the preceding subsection, in the event any Creditor is unable to surrender a note or other instrument evidencing a Claim against the Debtor that has been destroyed, lost or stolen, such entity may receive a distribution with respect to such Claim by presenting to the Disbursing Agent, in a form acceptable to the Disbursing Agent:  (i) proof of such entity's title to such Claim; (ii) an affidavit to the effect that the same has been lost and after diligent search cannot be located; and (iii) such indemnification as may be required by the Disbursing Agent and all other entities deemed appropriate by the Disbursing Agent from any loss, action, suit or any Claim whatsoever which may be made as a result of such entity's receipt of a distribution under the Plan.

(d)    All questions as to the validity, form or eligibility of any note or other instrument evidencing a Claim so surrendered shall be resolved by Final Order of the Bankruptcy Court.  The Disbursing Agent shall not be under any duty to give notification of defects in such tender or shall incur liability for failure to give notification of such defects.

7.13    **Delivery of Distributions.**  Except as provided in sections 7.13, 7.14 and 7.15

of the Plan, distributions to Holders of Allowed Claims shall be made: (1) at the addresses set forth

on the respective Proofs of Claim filed by such Holders; (2) at the addresses set forth in any written

notices of address changes delivered to the Disbursing Agent after the date of any related Proof of

Claim; or (3) at the address reflected in the Schedules if no Proof of Claim is filed and the

Disbursing Agent has not received a written notice of a change of address.

      7.14    **Undeliverable Distributions.**  (a)  If the distribution to the Holder of any

Claim is returned to the Disbursing Agent as undeliverable, no further distribution shall be made to

such Holder unless and until the Disbursing Agent is notified in writing of such Holder's then

current address.  Undeliverable distributions shall remain in the possession of the Disbursing Agent

until the earlier of (i) such time as a distribution becomes deliverable or (ii) such undeliverable

distribution becomes an unclaimed distribution pursuant to section 7.14 of the Plan.

      (b)    Until such time as an undeliverable distribution becomes an unclaimed

distribution pursuant to section 7.14 of the Plan, within 30 days after the end of each calendar quarter

following the Effective Date, the Disbursing Agent shall make distributions of all Cash that has

become deliverable during the preceding quarter.  Each such distribution shall include the net return

yielded from the investment of any undeliverable Cash, if any, from the date such distribution would

have been due had it then been deliverable to the date that such distribution becomes deliverable.

      (c)    Nothing contained in the Plan shall require the Reorganized Debtor to attempt

to locate any Holder of an Allowed Claim.

      7.15    **Unclaimed Distributions.**  Any Cash or other assets to be distributed under

the Plan shall revert to the Reorganized Debtor if it is not Claimed by the entity entitled thereto

before the later of (i) one year after the Effective Date; (ii) one year after such scheduled payment to

such entity under Article 4 of this Plan; or (iii) one year after an Order allowing the Claim of that

entity becomes a Final Order, and such entity's Claim shall be reduced to zero.

        7.16    **Set-offs.**  The Reorganized Debtor, as Disbursing Agent, may, but shall not be required to, set-off against the distributions to be made pursuant to the Plan, the Claims, obligations, rights, causes of action and liabilities of any nature that the Reorganized Debtor may hold against the Holder of an Allowed Claim, *provided, however,* that neither the failure to effect such a set-off nor the allowance of any Claim hereunder shall constitute a waiver or release by the Reorganized Debtor of any such Claims, obligations, rights, causes of action and liabilities that the Debtor (or the Reorganized Debtor) has or may have against such Holder.  To the extent the Reorganized Debtor elects to effectuate a set-off, it shall notify the Holder of the Allowed Claim in writing at least ten (10) days prior to effectuating the set-off.  To the extent the Holder of an Allowed Claim objects to the set-off, a written objection shall be provided to the Reorganized Debtor, as Disbursing Agent, no later than three (3) days prior to the set-off date or the objection shall be waived. Upon delivery of a written objection to the Disbursing Agent, whether by hand, mail, facsimile, electronic mail or otherwise, no set-off may be effected until the objection is resolved, and the Reorganized Debtor shall distribute any undisputed portion, if any, of the distribution otherwise payable to the Holder.

## ARTICLE 8

### INJUNCTION AND EXCULPATION

        **8.1**    **Discharge.  On the Effective Date of the Plan, the Debtor will be discharged from any debt that arose before entry of an order confirming this Plan, to the extent specified in section 1141 of the Bankruptcy Code.**

        **8.2**    **Injunction.  Except (i) as otherwise provided in the Plan or (ii) in any Final Order, all persons who have held, hold, or may hold Claims against the Debtor that arose before or were held as of the Effective Date, are permanently enjoined, on and after the**

Effective Date, from the commencement or continuation of any action, the employment of process, from taking any act to collect, enforce, attach, recover or offset against such Claim and taking any act to create, perfect or enforce any Lien or encumbrance against property of the Estate retained by the Reorganized Debtor or distributed to Creditors under this Plan.

8.2    **Limitation of Liability.** To the extent that the Debtor, or any of its respective officers, directors, managers or employees (acting in such capacity), or any professional person employed by any of them, solicited the Plan in good faith, they shall be exonerated to the extent provided in section 1125(e) of the Bankruptcy Code.

Nothing contained herein shall limit the liability of the Debtor's professionals pursuant to Rule 1.8(h)(1) of the New York State Rules of Professional Conduct.  From and after the Effective Date, a copy of the Confirmation Order and the Plan shall constitute, and may be submitted as, a complete defense to any Claim or liability released pursuant to Article 8 of the Plan.

## ARTICLE 9

### MISCELLANEOUS PROVISIONS

9.1    **Orders in Aid of Consummation.**  Pursuant to sections 105, 1141, 1142 and 1143 of the Bankruptcy Code, the Bankruptcy Court may enter one or more Orders in aid of Confirmation directing the implementation of matters or actions required by the Plan.

9.2    **Compliance with Tax Requirements.**  In connection with the Plan, the Reorganized Debtor (and in its capacity as the Disbursing Agent) shall comply with all withholding and reporting requirements imposed by federal, state and local taxing authorities and distributions under the Plan shall be subject to such withholding and reporting requirements; *provided, however,* that the transfer of any Cash, or other assets or interests hereunder shall not be subject to any federal,

state or local tax to the fullest extent provided under section 1146 of the Bankruptcy Code.

9.3     **Due Authorization by Creditors.**  Each and every Creditor who accepts the distributions provided for under the Plan on account of its Claim warrants that it is the lawful owner of such Claim and is authorized to accept the distributions provided for in the Plan and that there are no outstanding Liens, encumbrances, commitments, agreements, or understandings, express or implied, that may or can in any way defeat or modify the rights released, conveyed or modified by the Plan, or obligations undertaken by such Creditor under the Plan.

9.4     **Amendments.**  The Plan may be altered, amended or modified by the Debtor/Reorganized Debtor, in writing, signed by the Debtor, at any time before the substantial consummation of the Plan, as provided in sections 1101 and 1127 of the Bankruptcy Code and Bankruptcy Rule 3019.  Any substantive modification shall require notice and a hearing before the Bankruptcy Court for approval of the proposed modification of the Plan. The Reorganized Debtor in its own capacity and as the Disbursing Agent shall be deemed a Plan proponent for purposes of Section 1127 of the Bankruptcy Code.

9.5     **Revocation.**  The Debtor may revoke or withdraw the Plan at any time prior to entry of the Confirmation Order.  If the Plan is revoked or withdrawn or if no Confirmation Order is entered, the Plan shall be null and void, and nothing contained in the Plan shall (i) constitute a waiver or release of any Claims by or against the Debtor; or (ii) prejudice in any manner the rights of the Debtor or any other party in any further proceedings involving the Debtor or its Estate.

9.6     **Request for Relief Under Section 1129(b).**  If the Plan is accepted by one or more, but not all, impaired Classes of Claims, the Debtor may request confirmation under section 1129(b) of the Bankruptcy Code of any Class of Claims, subject to any modification of the Plan made pursuant to section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019.

9.7    **Filing of Additional Documents.**  Except as otherwise provided in the Plan, on or before the Effective Date, the Debtor may file with the Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan, and Debtor/Reorganized Debtor shall be responsible for the preparation and filing of any reports necessary until the entry of a Final Decree and on the Effective Date shall reserve sufficient funds for payment of such costs.  The Debtor/Reorganized Debtor shall also pay any Bankruptcy Fees until entry of a Final Decree, and on the Effective Date shall reserve sufficient funds for payment of such costs.

9.8    **United States Trustee's Fees.** The Debtor shall pay all Bankruptcy Fees on a quarterly basis until entry of a final decree, or dismissal or conversion of this Case, whichever is earlier.

9.9    **Section Headings.**  The section headings contained in the Plan are for reference purposes only and shall not affect in any way the meaning or interpretation of the Plan.

9.10    **Computation of Time.**  In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

9.11    **Successors and Assigns.**  The rights, benefits and obligations of any entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such entity.

9.12    **Notices.**  All notices and other communications to be given or made hereunder shall be in writing and shall be deemed to have been given or made when mailed or as otherwise set forth herein:

(a)    if to the Debtor, Robinson Brog Leinwand Greene Genovese & Gluck, P.C., 875 Third Avenue, 9th floor, New York, New York 10022, Attn:  A. Mitchell Greene, Esq;

(b)      if to any Creditor, at (i) the addresses set forth on the respective Proofs of Claim filed by such Holders; (ii) the addresses set forth in any written notices of address changes delivered to the Disbursing Agent after the date of any related Proof of Claim; or (iii) the address reflected in the Schedules if no Proof of Claim is filed and the Disbursing Agent has not received a written notice of a change of address;

(c)      if to any entity that has filed a notice of appearance, at the addresses set forth on such notice of appearance.

9.13    **Governing Law.** Except to the extent that the Bankruptcy Code or Bankruptcy Rules or other Federal law are applicable, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with the laws of the State of New York without giving effect to the principles of conflict of laws thereof.

9.14    **Other Actions.**   Nothing contained herein shall prevent the Debtor or Creditors from taking such actions as may be reasonably necessary to consummate the Plan, although such actions may not specifically be provided for within the Plan.

9.15    **Severability.**   In the event any provision of the Plan is determined to be unenforceable such determination shall in no way limit or affect the enforceability and operative effect of any or all other provisions of the Plan.

9.16    **Business Day.**   In the event that the Plan requires an act to be performed on a day that is not a Business Day, such act shall be performed on the first Business Day thereafter.

## ARTICLE 10

### RETENTION OF JURISDICTION

10.1    **Retention of Jurisdiction.**   Notwithstanding the entry of the Confirmation Order or the occurrence of the Effective Date, until the Case is closed, the Bankruptcy Court (or the

District Court) shall retain and have original, but not exclusive, jurisdiction to:

      (a)     Insure that the Plan is consummated, and to enter any Order pursuant to section 1142(b) of the Bankruptcy Code, to compel the Debtor and any other necessary party, to take such action and execute such documents to effectuate the Plan;

      (b)     Consider any modification of the Plan proposed pursuant to section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019;

      (c)     Allow, disallow, determine, liquidate, Classify or establish the priority, secured or Unsecured status of any Claim, including, without limitation, the resolution of any request for payment of any Administrative Expense, the resolution of any and all objections to the allowance or priority of Claims, and the resolution of any adversary proceeding;

      (d)     Grant or deny any and all applications for allowance of compensation or reimbursement of expenses authorized pursuant to the Bankruptcy Code or the Plan, for any period ending on or before the Effective Date;

      (e)     Resolve any motions pending on the Effective Date to assume, assume and assign or reject any Executory Contract or Unexpired Lease to which the Debtor is a party or with respect to which the Debtor may be liable and to hear, determine and if necessary, liquidate, any and all Claims arising therefrom;

      (f)     Ensure that distributions to Holders of Allowed Claims are accomplished in accordance with the provisions of this Plan;

      (g)     Decide or otherwise resolve any and all applications, motions, adversary proceedings, contested or litigated matters, and any other matters or grant or deny any applications involving the Debtor that may be pending on the Effective Date;

      (h)     Enter such Orders as may be necessary or appropriate to implement or

consummate the provisions of the Plan and all contracts, instruments, releases and other agreements or documents created in connection with the Plan or Disclosure Statement or to enforce all orders, judgments, injunctions, and rulings entered in connection with the Case, including, but not limited to any Order necessary to enforce the provisions of article 7 of the Plan;

(i)    Resolve any and all controversies, suits or issues that may arise in connection with the consummation, interpretation or enforcement of the Plan or any entity's obligations incurred in connection with the Plan;

(j)    Modify the Plan before or after the Effective Date pursuant to section 1127 of the Bankruptcy Code, or to modify the Disclosure Statement or any contract, instrument, release or other agreement or document created in connection with the Plan or Disclosure Statement;

(k)    Remedy any defect or omission or reconcile any inconsistency in any Order, the Plan, the Disclosure Statement or any contract, instrument, release or other agreement or document created in connection with the Plan, to the extent authorized herein or in the Bankruptcy Code;

(l)    Issue any injunctions, enter and implement other Orders or take such other actions as may be necessary or appropriate to restrain interference by any Entity with consummation or enforcement of the Plan;

(m)    Enter and implement such Orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked or vacated;

(n)    Determine any dispute arising under or related to the Plan, including, without limitation, any dispute concerning the scope or effect of any release or discharge provided for by the Plan or the Confirmation Order.

(o)    Determine any other matters that may arise in connection with or relate to the Plan, the Disclosure Statement, the Confirmation Order or any contract, instrument, release or other

agreement or document created in connection with the Plan or Disclosure Statement; and

(p)    Enter an Order or Final Decree concluding the Case.

10.2    **Post-Case Jurisdiction.**    Notwithstanding the entry of a final decree or an order closing the Case, the Bankruptcy Court shall retain jurisdiction to reopen the Case for the purpose of enforcing, by injunction or otherwise, the terms of the Plan, the Confirmation Order and any final decree, including, without limitation, the enforcement of any rights of the Debtor.

## ARTICLE 11

### CONDITION TO THE EFFECTIVE DATE

11.1    **Condition Precedent to Effectiveness**.    The Plan shall not become effective unless and until the Confirmation Order shall have been entered in this Case and no stay or injunction shall be in effect precluding the consummation of the transactions contemplated by this Plan.

## ARTICLE 12

### CLOSING THE CASE

12.1    **Substantial Consummation.**    Until the occurrence of the Effective Date and substantial consummation of the Plan, the Reorganized Debtor, its Property and its Creditors shall be subject to further Orders of the Bankruptcy Court.

12.2    **Closing the Case.**    Upon the substantial consummation of the Plan, the Reorganized Debtor shall expeditiously move for the entry of a final decree closing the Case and such other relief as may be just and appropriate.

Dated: New York, New York
      October 18, 2019

**AUTORAMA ENTERPRISES INC.**


**By: /s/ Daniel Powers       **
**DANIEL POWERS**
**PRESIDENT**

**ROBINSON BROG LEINWAND GREENE**
**GENOVESE & GLUCK P.C.**
**Attorneys for the Debtor**
875 Third Avenue, 9th Floor
New York, New York 10022
Tel. No.: (212) 603-6300

**By: /s/ A. Mitchell Greene    **
**A. MITCHELL GREENE**

# EXHIBIT A

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------X

In re:                                                   Chapter 11

**AUTORAMA ENTERPRISES INC. F/K/A**          Case No:  18-13837-smb
**AUTORAMA ENTERPRISES OF BRONX,**
**INC.,**

                                   Debtor.
------------------------------------------------------------X

## STIPULATION

        This Stipulation and Order (the "Stipulation") is entered into by and between Kimcomatt
Realty Company L.P. (the "Landlord") and Autorama Enterprises Inc. (the "Debtor," and
together with the Landlord, the "Parties").

## RECITALS

        A.      On November 18, 2018 (the "Petition Date"), the Debtor filed a voluntary petition
for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the
Southern District of New York (the "Bankruptcy Court").

        B.      The Debtor is the lessee under the Agreement of Lease dated August 18, 2015
with the Landlord (the "Lease").

        C.      Pursuant to the Order Extending Debtor's Time to Elect to Assume or Reject
Non-Residential Real Property Leases, the Debtor's time to elect to assume or reject the Lease
under section 365(d)(4) of the Bankruptcy Code has been extended to September 6, 2019.

        D.      Prior to the Petition Date, the Debtor was in arrears to the Landlord in the amount
of $274,396.50 (the "Prepetition Arrears")

        E.      The Parties engaged in good faith negotiations to resolve the potential litigation of
a motion to assume the Lease.  As a result of these good faith negotiations, the Parties have
agreed to settle, compromise, and resolve all such claims relating to the Lease on the conditions
set forth herein.

        NOW, THEREFORE, in consideration of the foregoing and the mutual promises of the
Parties herein contained, and other good and valuable consideration, the receipt and sufficiency
of which is hereby acknowledged, the Parties hereby Stipulate and the Bankruptcy Court, for
good cause shown, hereby Orders as follows:

1.       The above recitals are incorporated into and made a substantive part of this Stipulation.

2.       The Debtor is authorized to assume the Lease, subject to the conditions set forth herein.

3.       The Debtor shall pay to the Landlord $274,396.50 plus $20,000.00 in legal fees for a total amount of $294,396.50 to cure the Prepetition Arrears (the "Cure Amount").

4.       The Debtor shall pay the Cure Amount by (a) paying $110,000 by bank check to the Landlord upon approval of the Stipulation by the Bankruptcy Court and (b) the remaining $184,396.50 will be paid by paying the Landlord an additional $10,000 per month with the Debtor's regular monthly rent payment under the Lease starting October 20, 2019 until the Cure Amount is satisfied.

5.       All payments due under this Stipulation, including the Cure Amount, and any payment due under the Lease, including, but not limited to the monthly rent, real estate taxes, or any other charges (collectively "Rent") shall be due on the 20th of every month until the final payment is made.  Thereafter, Rent shall be due as set forth in the Lease.

6.       The automatic stay is modified effective as of the Petition Date to allow the New York City Marshal to  use the warrant of eviction that was issued by the New York City Civil Court, Bronx County, post-petition subject to the terms of this Order.

7.       If the Debtor defaults on paying the Cure Amount and/or Rent due under this Stipulation, notice of such default (the "Cure Notice") shall be provided by either the Landlord, its below attorneys, and/or Leonard Morrow, P.C., to (a) Debtor's counsel via email (amg@robinsonbrog.com and cy@robinsonbrog.com and (b) the Debtor via overnight mail to Autorama Enterprises, Inc., 935 Garrison Avenue, Bronx, New York 10474, Attn:  Daniel Powers.  If the Debtor defaults on paying the Cure Amount or any Rent: (a) if the Debtor's bankruptcy case remains pending in this Court, the Debtor shall have seven (7) calendar days to cure such default, and, if the Debtor fails to cure, then the Landlord may settle an order on five days' notice to lift the automatic stay and enforce the warrant of eviction or (b) if the Debtor's case is no longer pending in this Court, the Debtor will have seven (7) calendar days to cure such default, and, if the Debtor fails to cure, then the Landlord may immediately enforce the warrant of eviction.

8.       If a Cure Notice is sent, the amount due under the Cure Notice will not be deemed cured unless it includes an additional sum of 5% of the defaulted amount.

9.       If a Cure Notice is sent five times prior to the final payment due under this Stipulation, then, on the sixth default, the Landlord may settle an order on five days' notice to lift the automatic stay and/or enforce the warrant of eviction.

10.       If all payments due under the Stipulation are made, the Landlord's default remedies shall then revert to those contained solely in the Lease or at law.

11.     This Stipulation and Order will govern with respect to the Cure Amount and the provisions of this Stipulation and Order shall survive entry of any order dismissing this case, an order converting the Debtor's Chapter 11 Case to one under Chapter 7, or an order confirming or consummating any plan of reorganization of the Debtor's estate.

12.     The Lease is hereby amended so that the address for Landlord in the Lease is changed to read as follows: Kimcomatt Realty Company, L.P., c/o Barry J. Haskell, PO Box 480999, Delray Beach  FL  33448. Rent and the Cure Amount, as defined in this Stipulation, and all notices by Debtor to Landlord shall be sent to the changed address.

13.     Due and sufficient notice of this Stipulation and the proposed entry of this Order has been given to all interested parties by notice of proposed order on seven days' notice.  No additional notice or hearing is required.

14.     The Parties expressly acknowledge and agree that the terms of this Stipulation have been completely read, are fully understood, and are voluntarily accepted.

15.     The Bankruptcy Court shall retain jurisdiction to hear and determine all matters arising from or relating to the implementation of this Stipulation.

16.     This Stipulation may be executed in multiple counterparts, each of which shall be deemed an original, including any facsimile or "PDF" counterparts, and which together shall constitute one and the same agreement.


Dated: 7/26/19                                            Dated: 7/26/19

ROBINSON BROG LEINWAND                    BORAH, GOLDSTEIN, ALTSCHULER,
GREENE GENOVESE & GLUCK PC              NAHINS & GOIDEL, P.C.

By:     /s/ A. Mitchell Greene                       By:     /s/ Jeffrey C. Chancas
        A. Mitchell Greene                                    Jeffrey C. Chancas
        875 Third Avenue                                     377 Broadway, 6th Fl.
        New York, New York 10022                     New York, New  York 10013
        (212) 603-6329                                       (212) 965-2663
        (212) 956-2164                                       jchancas@borahgoldstein.com
        amg@robinsonbrog.com

                                                                 *Attorneys for Kimcomatt*

*Attorneys for Debtor*


SO ORDERED

                                              _____
                                              Hon. Judge Stuart M. Bernstein
                                              United States Bankruptcy Judge


{01018354.DOC;1 }3